# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **Donnellon McCarthy Enterprises** | ) | **CASE NO.   1:25-cv-1430** |
| **dba Ohio Business Machines** | ) | |
| 10855 Medallion Drive | ) | |
| Cincinnati, OH 45241 | ) | **JUDGE** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEX Imaging, LLC** | ) | |
| 4577 Hinckley Industrial Parkway | ) | |
| Cleveland, Ohio 44109 | ) | |
| and | ) | |
| c/o Corporation Service Company | ) | |
| 3366 Riverside Drive, Suite 103 | ) | |
| Upper Arlington, OH 43221 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **Anthony Haddad** | ) | |
| 4651 Main Hill Drive | ) | |
| Seven Hills, OH 44131 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **Dax Bushmeyer** | ) | |
| 4417 Turtle Creek Drive | ) | |
| Perrysburg, OH 43551 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **Mathew Utter** | ) | |
| 3651 Schneider Road | ) | |
| Toledo, OH 43614 | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## CIVIL COMPLAINT
### WITH JURY DEMAND ENDORSED HEREON

---

Plaintiff Donnellon McCarthy Enterprises, Inc. dba Ohio Business Machines (hereafter, "DME" or Plaintiff), by and through its undersigned counsel, hereby states as follows:

## PRELIMINARY STATEMENT

1.      This civil matter arises out of the unlawful misconduct of former Ohio Business Machines sales employees Defendants Anthony Haddad, Dax Bushmeyer, and Matt Utter, and the facilitation of that misconduct by their current employer Defendant DEX Imaging, LLC ("DEX"). Defendants' unlawful misconduct includes but is not limited to the intentional, willful, and malicious retention, misuse, disclosure, and misappropriation of Plaintiff DME's confidential business information and trade secrets in violation of federal and Ohio law and in breach of lawful and enforceable *Non-Competition, Non-Solicitation and Confidentiality Agreements*. Moreover, Defendants' conduct to further their unlawful competition includes the solicitation of numerous customers of Plaintiff, in willful violation of those same Agreements, through deceptive trade practices and intentionally misleading and disparaging statements in violation of federal and Ohio law. All three individual Defendants have knowingly violated and continue to violate federal and Ohio law, and the clear terms of these respective Agreements, for their own individual benefit, and at the direction and for the benefit of their current employer Defendant DEX, a direct competitor of Plaintiff in the office equipment and services industry. Plaintiff has suffered and continues to suffer financial and reputational harm, including a loss of goodwill, business relations, customers, revenue, and profit, and other economic damage, loss, and expense as a direct and proximate result of Defendants' unlawful conduct described herein.

## PARTIES

2.    **Plaintiff Donnellon McCarthy Enterprises, Inc**. is a corporation formed under the laws of the State of Ohio and transacting business in the state of Ohio.

3.    **Non-Party Ohio Business Machines, LLC** (hereafter, "OBM") is a Limited Liability Company formed under the laws of the State of Ohio. OBM formerly transacted business in the state of Ohio.

4.    In December 2024, Plaintiff DME acquired all the assets of OBM, and now operates and transacts business in northern Ohio, southern Michigan, and western Pennsylvania as "Ohio Business Machines, a DME Company."

5.    **Defendant DEX Imaging, LLC** is a Limited Liability Company formed under the laws of the State of Delaware and transacting business in the state of Ohio with a primary office located at 4577 Hinckley Industrial Parkway, Cleveland, Ohio 44109.

6.    **Defendant Anthony Haddad** is an individual who resides in Cuyahoga, Ohio.

7.    **Defendant Dax Bushmeyer** is an individual who resides in Wood County, Ohio.

8.    **Defendant Mathew Utter** is an individual who resides in Lucas County, Ohio.

## JURISDICTION AND VENUE

9.    This Complaint contains claims for violations of federal law under the Defend Trade Secret Act ("DTSA"), 18 U.S.C. §§ 1832 and 1836, and the Lanham Act, 15 U.S.C. § 1125. These claims therefore arise under the laws of the United States and require the determination of a federal question. Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

10.    Additionally, this Complaint seeks declaratory judgment, injunctive relief, and monetary damage for violations of Ohio's Uniform Trade Secrets Acts ("OUTSA"), R.C. §

1333.61, *et seq*., breach of contract (non-disclosure and use, non-competition, non-solicitation, and disparagement), tortious interference with business relations, and unjust enrichment. Plaintiff's state law claims are so related to its federal claims that they form part of the same case and controversy. Accordingly, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.　　Venue is also proper, as all Defendants maintain residency and/or transact business within the State of Ohio, and Ohio law controls the contractual and common law claims contained herein. Further, a substantial part of the events, actions, or omissions giving rise to the claims set forth herein occurred in the Northern District of Ohio, including without limitation, Cuyahoga and Lucas Counties in Ohio. All the parties and multiple witnesses to this litigation are accordingly located within the State of Ohio.

## FACTS

12.　　Plaintiff DME, non-party OBM, and Defendant DEX, are direct competitors in the office equipment and services industry. All three of these companies sold or sell digital office equipment, including copiers, scanners, printers, fax machines, and mail machines, as well as business services like document automation, and technology solutions such as managed IT and cybersecurity solutions, and all three provide these products and services in northern Ohio, southern Michigan, and western Pennsylvania.

13.　　In December 2024, Plaintiff DME acquired all rights, interest, and title to the assets, tangible and intangible, of OBM. Those assets include but are not limited to supplies, inventory, marketing and customer lists, names, information, and correspondence.

14.　　Those assets also include OBM's contractual agreements with customers, suppliers, vendors, and employees, including the *Non-Competition, Non-Solicitation and Confidentiality*

*Agreements* between OBM and Defendants Haddad, Bushmeyer, and Utter (hereafter respectively, the "Haddad Agreement," "Bushmeyer Agreement," and "Utter Agreement," or collectively the "Agreements").

15.  By operation of Ohio law, Plaintiff DME accordingly owns and possesses all OBM's prior legal and contractual rights, privileges, and benefits pursuant to those assets and Agreements, including the right to enforce the terms, conditions, obligations, and restrictions set forth in the Agreements.

16.  In furtherance of its business, OBM invested significant time, effort, and expense to develop significant and economically valuable proprietary and confidential business information and trade secrets regarding its specific industry and business, including but not limited to: business proposals, bids, contacts, leases, and service agreements; customer names, contact information, and lists; vendor names, contact information, and lists; manufacturer and supplier names, contact information, and lists; training materials; logistical data or materials; prospective customer, manufacturer, supplier, and vendor materials and service agreements; models and details of raw costs, pricing, and margins; customer-specific information, including contractual terms and conditions, contractual expiration dates, equipment specifications, configurations, accessories, and hardware details, sales terms, lease terms, service terms, and the like; industry-specific sales knowledge and knowhow; financial growth plans; financial data; price negotiation knowledge; and business methodology and modeling unique to the office equipment and services industry (hereafter collectively, "Confidential Information").

17.  Plaintiff DME similarly invested significant time, effort, and expense to purchase, acquire, and continue developing the significant and economically valuable Confidential Information previously developed by OBM.

5

18.     The Confidential Information derives independent economic value from not being generally known or readily ascertainable through proper means by others outside of OBM and DME who could obtain economic value from its disclosure or use.

19.     OMB took reasonable measures to maintain the secrecy of the Confidential Information, and DME has continued to take such reasonable measures. Those measures include but are not limited to: requiring all sales personnel, specifically including Defendants Haddad, Bushmeyer, and Utter, to sign and adhere to *Non-Competition, Non-Solicitation and Confidentiality Agreements* expressly preserving the confidentiality of and governing employees' obligations and restrictions regarding the retention, use, and disclosure of the Confidential Information during and after their employment with OBM; reasonably limiting physical access to Confidential Information; reasonably limiting electronic access to Confidential Information, including password protection and segregating access to information among various roles and territories; reasonably limiting employees' ability to download and print Confidential Information; and similar measures.

**Defendants Haddad, Bushmeyer, and Utter
Confidentiality, Non-Competition, Non-Solicitation,
and Non-Disparagement Obligations**

20.     OBM previously employed **Defendant Anthony Haddad** as a Sales Representative and Sales Account Manager in and around Cleveland, Ohio. In those positions, Defendant Haddad's duties included managing and meeting with major accounts and identifying potential clients, setting up meetings, and conducting product demonstrations to improve business contacts, vendor contacts, and overall relationships to prospective businesses, and negotiating sales and lease agreements for OBM's equipment and services, all for the benefit of OBM.

6

21.     On or about May 13, 2019, Defendant Haddad entered into a *Non-Competition, Non-Solicitation and Confidentiality Agreement* ("Haddad Agreement") with OBM. A copy of the Haddad Agreement is attached hereto as **Exhibit 1**.

22.     OBM previously employed **Defendant Dax Bushmeyer** as its Director of Sales – Northwest District, in or around Toledo, Ohio. In that position, Defendant Bushmeyer's duties included leading the development and implementation of sales strategies, as well as supervising other OBM sales representatives, warehouse, and administration employees, to increase sales output, maximize profit, and expand market share for OBM's portfolio of copiers, IT hardware, IT services, VOIP, Cloud-based services, and data storage, and negotiating sales and lease agreements for OBM's equipment and services, all for the benefit of OBM.

23.     On or about October 1, 2019, Defendant Bushmeyer entered into a *Non-Competition, Non-Solicitation and Confidentiality Agreement* ("Bushmeyer Agreement") with OBM. A copy of the Bushmeyer Agreement is attached hereto as **Exhibit 2**.

24.     OBM previously employed **Defendant Mathew Utter** as a Sales Representative and Sales Account Manager in or around Toledo, Ohio. In those positions, Defendant Utter's duties included managing and meeting with major accounts and identifying potential clients, setting up meetings, and conducting product demonstrations to improve business contacts, vendor contacts, and overall relationships with customers and prospective businesses, and negotiating sales and lease agreements for OBM's equipment and services, all for the benefit of OBM.

25.     On or about December 1, 2019, Defendant Utter entered into a *Non-Competition, Non-Solicitation and Confidentiality Agreement* ("Utter Agreement") with OBM. A copy of the Utter Agreement is attached hereto as **Exhibit 3**.

26.     Pursuant to the clear and unambiguous terms of the Agreements, Defendants Haddad, Bushmeyer, and Utter specifically agreed without time limitation **not to *use or disclose*** OBM's Confidential Information and/or trade secrets except as permitted in the performance of their OBM job duties. Specifically, Defendants Haddad, Bushmeyer, and Utter agreed ***not* to** directly or indirectly, on their own behalf or on behalf of any person, firm, corporation or other business entity:

> ***Use or disclose to any person* the Proprietary Information**, or disclose the existence of the ...
> *See* the Agreements, Exhibits 1-3, at ¶¶ 1 & 3.B (emphasis added).

27.     Pursuant to the clear and unambiguous terms of the Agreements, Defendants Haddad, Bushmeyer, and Utter also specifically agreed **not to *compete*** directly or indirectly with OBM's business for a certain period of time and within certain specified geographic areas. Specifically, Defendants Haddad, Bushmeyer, and Utter agreed ***not* to directly or indirectly do *any* of the following**:

> **Call upon, solicit, sell to or engage in any other activity for the purpose of selling or supplying copiers and related copier equipment**, data and print management equipment and services, IT equipment and related management services, VOIP, telecommunications and mailing equipment and services, including, but not limited to activities in any of the foregoing **or any other lines of business or services *directly or indirectly competitive with, or adverse to, the business and services of* [OBM]**.
> <div align="center">***</div>
> **Engage in any business or enterprise (whether as an** owner, **partner**, officer, director, **employee**, **consultant**, investor, lender, **or otherwise**), *that directly or indirectly competes* with any current or future business of [OBM]**.
> *See* the Agreements, Exhibits 1-3, at ¶¶ 3.A.i. & 3.A.iii. (emphasis added).

28.     These non-competition restrictions were reasonably and narrowly tailored in geographic scope to be no greater than necessary to protect OBM's legitimate business interests, and not impose undue hardship on Defendants. Specifically, those non-competition restrictions were limited to certain specifically identified Counties in northern Ohio, southern Michigan, and

western Pennsylvania where OBM previously and now Plaintiff DME operate and sell. See, the Agreements, Exhibits 1-3, at ¶¶ 3.A.i. & 3.A.iii. and EXHIBIT A thereto. The Agreements do not restrict Defendants Haddad, Bushmeyer, and Utter from engaging in competitive activities or selling any products or services *outside* that limited and agreed geographic area.

29.     Pursuant to the clear and unambiguous terms of the Agreements, Defendants Haddad, Bushmeyer, and Utter also specifically agreed, during their employment with OBM and for a period of twelve (12) months afterward, **not to *solicit* OBM *customers***. Specifically, Defendants Haddad, Bushmeyer, and Utter agreed ***not* to directly or indirectly do *any* of the following**:

> **Solicit, assist in the solicitation of**, or otherwise encourage or induce **any customer, … of [OBM] to modify or terminate their relationship with [OBM]**.
> *See* the Agreements, Exhibits 1-3, at ¶ 3.A.ii. (emphasis added).

30.     These non-competition and non-solicitation restrictions were reasonably and narrowly tailored in temporal duration to be no greater than necessary to protect OBM's legitimate business interests, and not impose undue hardship on Defendants. Specifically, those non-competition and non-solicitation restrictions were limited to the duration of Defendants' employment with OBM and a period of twelve (12) months after each individual Defendant's employment with OBM ended. *See* the Agreements, Exhibits 1-3, at ¶ 3.A.

31.     Pursuant to the clear and unambiguous terms of the Agreements, Defendants Haddad, Bushmeyer, and Utter specifically also agreed without time limitation **not to make *disparaging statements*** regarding OBM. Specifically, Defendants Haddad, Bushmeyer, and Utter agreed not to:

> In any manner, aid or be party to any acts, or make any statements, which ***disparage* or tend to diminish the goodwill or business reputation of [OBM]**.

9

*See* the Agreements, Exhibits 1-3, at ¶ 3.B (emphasis added).

32.     After their respective executions of the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement, Defendants Haddad, Bushmeyer, and Utter continued their respective employment roles with OBM.

33.     OBM granted Defendants Haddad, Bushmeyer, and Utter access to certain Confidential Information for use in connection with the performance of their job duties on OBM's behalf.

34.     On or about February 6, 2025, Defendant Haddad voluntarily resigned his employment with OBM.

35.     On or about July 17, 2024, OBM ended Defendant Bushmeyer's employment with OBM.

36.     On or about July 22, 2024, Defendant Utter voluntarily resigned his employment with OBM.

37.     Following Defendants Haddad's, Bushmeyer's, and Utter's respective separations from OBM, Defendants Haddad, Bushmeyer, and Utter sought and accepted sales positions with Defendant DEX, a direct competitor of OBM and DME in the office equipment and services industry.

38.     By virtue of their employment with Defendant DEX, Defendants Haddad, Bushmeyer, and Utter have engaged and continue to engage in activities directly or indirectly competitive with, and adverse to, the business and services of OBM and DME in direct violation of the Agreements.

39.     By virtue of their employment with Defendant DEX, Defendants Haddad, Bushmeyer, and Utter have engaged and continue to engage business as employees, consultants,

or otherwise, that directly competes with current and future business of OBM and DME in direct violation of the Agreements.

40.     Following their respective resignations from OBM, individual Defendants Haddad, Bushmeyer, and Utter kept and retained and continue to keep and retain OBM and DME Confidential Information, both in paper and electronic form.

41.     Defendants Haddad, Bushmeyer, and Utter have stored and continued to store such OBM and DME Confidential Information on DEX property, both in paper and electronic form.

42.     Defendant DEX has permitted and continues to permit Defendants Haddad, Bushmeyer, and Utter to store OBM Confidential Information on DEX property, both in paper and electronic form, with the knowledge that the Confidential Information is OBM and DME property, with the knowledge that the Confidential Information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, and with the intent of using OBM and DME Confidential Information for Defendant DEX's own benefit and to unlawfully compete with OBM and DME.

43.     Individual Defendants Haddad, Bushmeyer, and Utter have disclosed and continue to disclose OBM and DME Confidential Information to others at DEX, including DEX management personnel.

44.     Defendants have used OBM and DME Confidential Information to directly compete with the business and services of OBM and DME and to obtain an unfair competitive advantage over OBM and DME. Specifically, Defendants have used their knowledge of OBM's and DME's Confidential Information to tailor proposals and bids to OBM and DME customers for DEX equipment and services to offer terms, conditions, and prices that are more favorable to the customers than OBM's and DME's.

45.     Defendant DEX has permitted and continues to permit Defendants Haddad, Bushmeyer, and Utter to use their knowledge of OBM's and DME's Confidential Information to tailor proposals and bids to OBM and DME customers for DEX equipment and services to offer terms, conditions, and prices that are more favorable than OBM's and DME's, with the knowledge that the Confidential Information is OBM and DME property, with the knowledge that the Confidential Information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, and with the intent of using OBM and DME Confidential Information for Defendant DEX's own benefit and to unlawfully compete with OBM and DME.

46.     Individual Defendants Haddad, Bushmeyer, and Utter have shared OBM and DME Confidential Information and coordinated efforts with other DEX sales personnel, including DEX management personnel, to indirectly solicit OBM and DME customers whom the Agreements prohibit Defendants Haddad, Bushmeyer, and Utter from soliciting directly.

47.     Individual Defendants Haddad, Bushmeyer, and Utter have used other DEX sales personnel, including DEX management personnel, to indirectly solicit OBM and DME customers to conceal Defendants Haddad's, Bushmeyer's, and Utter's involvement and the violation of their Confidential Information, non-competition, and non-solicitation obligations.

48.     Defendants Haddad, Bushmeyer, and Utter and other DEX sales personnel have made untrue, materially misleading, and disparaging statements about OBM and DME, their staff, and their equipment and services in an effort to unfairly and unlawfully compete with OBM and DME business, to suggest OBM and DME will be unable or unwilling to satisfy the customers' needs, and to make DEX equipment and services seem more appealing by comparison.

49.     Without question, individual Defendants Haddad's, Bushmeyer's, and Utter's retention, disclosure, and use of OBM and DME Confidential Information for their individual

benefit and/or for the benefit of OBM's and DME's direct competitor DEX, expressly **violates the confidentiality** covenants contained in the Agreements.

50.     Without question, individual Defendants Haddad's, Bushmeyer's, and Utter's subsequent and ongoing employment with DEX, a direct competitor of OBM and DME, within the prohibited twelve-month timeframe and geographic territories expressly **violates the non-competition** covenants contained in the Agreements.

51.     Without question, individual Defendants Haddad's, Bushmeyer's, and Utter's direct and indirect solicitation of OBM and DME customers within the prohibited twelve-month timeframe expressly **violates the non-solicitation** covenants contained in the Agreements.

52.     Without question, individual Defendants Haddad's, Bushmeyer's, and Utter's untrue, materially misleading, and disparaging statements about OBM and DME, their staff, and their equipment expressly **violate the non-disparagement** covenants contained in the Agreements.

53.     Without question, individual Defendants Haddad, Bushmeyer, and Utter have used and carried out deceptive means and methods to knowingly further unfair competition in violation of the respective lawful Agreements, including but not limited individually contacting, advertising, or soliciting DME's customers and prospective customers in the geographic area through false, misleading, and/or disparaging statements regarding DME's business and/or services as well as DME's acquisition of OBM or existing customer relationships following DME's acquisition of OBM, in order to further their unfair competition and anticompetitive conduct; otherwise coordinating with other DEX sales personnel to achieve the similar purpose of contacting, advertising, and/or soliciting DME's customers and prospective customers in the geographic area as well as to misrepresent DME's business and services through false, misleading and/or

disparaging statements about DME or OBM, in attempt to intentionally circumvent their respective covenants of non-competition, non-solicitation, and non-disparagement; and/or knowingly misusing and utilizing DME's trade secrets and Confidential Information, in willful violation of the respective lawful Agreements, to achieve the similar purpose of unfairly competing for DME's customers and prospective customers in the geographic area and bring harm to DME, Defendants' direct competitor.

54.     On or about May 7, 2025, DME notified Defendant Haddad in writing of these violations of his Agreement, reminded him of his legal confidentiality, non-competition, non-solicitation, and non-disparagement obligations, and instructed him to cease and desist his unlawful activities. Defendant Haddad has nevertheless continued these unlawful activities.

55.     On or about August 12, 2024 and February 27, 2025, OBM and DME notified Defendant Bushmeyer in writing of these violations of his Agreement, reminded him of his legal confidentiality, non-competition, non-solicitation, and non-disparagement obligations, and instructed him to cease and desist his unlawful activities. Defendant Bushmeyer has nevertheless continued these unlawful activities.

56.     On or about August 12, 2024, September 12, 2024, and February 27, 2025, OBM and DME notified Defendant Utter in writing of these violations of his Agreement, reminded him of his legal confidentiality, non-competition, non-solicitation, and non-disparagement obligations, and instructed him to cease and desist his unlawful activities. Defendant Utter has nevertheless continued these unlawful activities.

57.     Defendant DEX hired Defendants Haddad, Bushmeyer, and Utter with actual knowledge of their prior employment with DEX's direct competitor OBM.

58.     Upon information and belief, Defendant DEX hired Defendants Haddad, Bushmeyer, and Utter with actual knowledge of their confidentiality, non-competition, non-solicitation, and non-disparagement obligations pursuant to the respective Agreements.

59.     On or about September 12, 2024, February 27, 2025, and May 7, 2025, DME notified Defendant DEX in writing of these various Agreements, the individual Defendants' obligations pursuant to the Agreements, and the individual Defendants' continuing violations of the Agreements, reminded DEX of its legal obligations not to retain, use, or disclose any OBM and DME Confidential Information, and instructed DEX to cease and desist its unlawful activities.

60.     On or about February 27, 2025 and May 7, 2025, Plaintiff DME provided Defendant DEX with true and accurate copies of the Haddad Agreement, the Bushmeyer Agreement, and Utter Agreement.

61.     Defendant DEX has nevertheless continued these unlawful activities.

62.     Defendant DEX has nevertheless continued to employ individual Defendants Haddad, Bushmeyer, and Utter in violation of their legal and contractual obligations to OBM and DME for DEX's benefit and to OBM's and DME's detriment.

63.     Defendant DEX continues to knowingly use and/or disclose OBM's and DME's Confidential Information and/or trade secrets in spite of DEX's knowledge that such Confidential Information and/or trade secrets were acquired by improper means and under circumstances giving rise to the obligation to maintain their secrecy and limit their use.

64.     Defendant DEX has knowingly permitted individual Defendants Haddad, Bushmeyer, and Utter to engage in all the unlawful misconduct described herein to unfairly and unlawfully compete with OBM and DME, and to obtain an unfair competitive advantage over OBM, for DEX's benefit and to OBM's and DME's detriment.

65.     By this unlawful conduct, Defendants have wrongfully and unlawfully misappropriated OBM's and DME's Confidential Information and trade secrets for Defendants' benefit and to OBM's and DME's detriment.

66.     By this unlawful conduct, Defendants have wrongfully and unlawfully engaged in unlawful deceptive business practices and unfair competition for Defendants' benefit and to OBM's and DME's detriment.

67.     By this unlawful conduct, Defendant DEX has tortiously interfered with the respective contractual relationships between OBM and DME and individual Defendants Haddad, Bushmeyer, and Utter for DEX's benefit and to OBM's and DME's detriment.

68.     By this unlawful conduct, Defendants have tortiously interfered with the respective contractual relationships between OBM and DME and their customers for Defendants' benefit and to OBM's and DME's detriment.

69.     By this unlawful conduct, Defendants have been unjustly enriched for Defendants' benefit and to OBM's and DME's detriment.

70.     As a result of Defendants' unlawful conduct described herein, Plaintiff DME has lost customers to Defendants, Plaintiff DME has been forced to adjust its equipment and services offerings to less favorable and less profitable terms in order to retain other OBM and DME customers, and Plaintiff DME has suffered other economic damages and loss.

**COUNT I**
**Violations of the Federal Defend Trade Secrets Act**
**Against All Defendants**

71.     Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

72.     OBM invested significant time, effort, and expense to develop significant and economically valuable confidential business information and trade secrets regarding its specific industry and business as detailed above.

73.     Plaintiff DME similarly invested significant time, effort, and expense to purchase, acquire, and continue developing the significant and economically valuable Confidential Information previously developed by OBM.

74.     The Confidential Information derives independent economic value from not being generally known or readily ascertainable through proper means by others outside of OBM and DME who could obtain economic value from its disclosure or use.

75.     OMB took reasonable measures to maintain the secrecy of the Confidential Information, and DME has continued to take such reasonable measures as detailed above.

76.     The Confidential Information accordingly constitutes Plaintiff DME's trade secrets as defined by the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1832 and 1836.

77.     Neither OBM nor DME expressly or impliedly granted or otherwise authorized Defendants permission to retain, use, or disclose the Confidential Information or trade secrets.

78.     Through their employment with DEX, and through DEX's employment of Defendants Haddad, Bushmeyer, and Utter, Defendants have misappropriated, and will inevitably continue to misappropriate, OBM's and DME's Confidential Information and trade secrets in violation of the DTSA.

79.     In addition, Defendants Haddad, Bushmeyer, and Utter have converted and/or further intend to convert OBM's and DME's trade secrets related to products and services used in interstate commerce, to the economic benefit of Defendants, with knowledge that this

17

misappropriation and misuse of OBM's and DME's trade secrets will further injure the financial well-being of DME.

80.     Through the use of this OBM's and DME's Confidential Information and trade secrets, Defendants – DME's direct competitors – have and will continue to obtain economic value and an unfair business advantage over DME.

81.     Through the actions described herein, Defendants have violated and will continue to violate the DTSA.

82.     Defendants' conduct as detailed herein demonstrates that Defendants' misappropriation of DME's Confidential Information and trade secrets was knowing, intentional, willful, and malicious.

83.     Defendants misappropriation of OBM's and DME's Confidential Information and trade secrets has and will continue to cause financial harm to Plaintiff DME.

**COUNT II**
**Unfair Competition in Violation of Lanham Act**
**Against All Defendants**

84.     Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

85.     The individual Defendants have used, advertised, and/or conveyed false, misleading, and/or disparaging statements regarding DME, OBM, and their customer relationships following DME's acquisition of OBM, to DME's customers, as set forth in the herein.

86.     The individual Defendants have misappropriated and wrongfully utilized DME's trade secrets and Confidential Information for the purpose of unlawfully circumventing the terms of their respective Agreements, going as far as coordinating with DEX personnel and others to

18

specifically and knowingly compete and solicit away existing DME customers and prospective DME customers within the restricted timeframe and geographic area.

87.     At all relevant times, DEX has possessed full knowledge of the individual Defendants respective Agreements and the covenants contained therein, but DEX knowingly permitted, furthered, or encouraged, and continues to permit, further, or encourage, the individual Defendants' use, advertisement, and/or conveyance of false, misleading, and/or disparaging statements about DME and OBM, for its own competitive business advantage and gain.

88.     At relevant all times, DEX knowingly permitted, furthered, or encouraged, and continues to permit, further, or encourage, its own DEX personnel to assist and further the unlawful conduct of the individual Defendants, for its own competitive business advantage and gain.

89.     At all relevant times, DEX and the individual Defendants have jointly intended to mislead, deceive, or otherwise unfairly compete for DME's existing customers and prospective customers in the restricted geographic market through deceptive means and methods that includes but is not limited to false, misleading, and/or disparaging statements, advertisements, and/or communications to knowingly harm and cause damage to DME, its direct competitor.

90.     Collectively, Defendants' unlawful and deceptive conduct, including the false, misleading, and/or disparaging statements regarding DME's business and services, DME's acquisition of OBM, and/or OBM business or OBM customer relationships following DME's acquisition of OBM, constitutes unfair competition and anticompetitive conduct aimed at intentionally or recklessly bringing harm to DME, Defendants' direct competitor in the same sales industry, all of which was and continues to be carried out by Defendants, and all of which has asserted and continues to assert unlawful influence over DME's existing customers and DME's prospective business in geographic area.

91.     Defendants have carried out and continue to carry out such unlawful conduct in order to steer away the existing and prospective from the business of DME and to DEX, and advance DEX's position in the market and further its commercial promotion.

92.     Defendants' unlawful conduct as set forth herein, individually and collectively constitutes unlawful, unfair, and anticompetitive actions introduced into interstate commerce to achieve wrongful commercial promotion and create confusion about the origin or sponsorship of goods or services of DME, in violation of the Lanham Act.

93.     Defendants' unlawful actions do not merely constitute commercial advertising or general competition but instead demonstrate an intentional and malicious purpose to disparage DME's business and services, to unfairly compete against DME's business, products, and services, and to solicit away DME's business and customers through deception and anticompetitive conduct, in violation of the Lanham Act.

94.     Accordingly, Defendants' unlawful conduct violates the Lanham Act, 15 U.S.C. § 1125 and § 1127, *et seq.*

95.     Defendants knowingly committed *per se* violations and continue to knowingly commit *per se* violations of the Lanham Act, pursuant to 15 U.S.C. § 1125(a).

96.     Accordingly, DME is entitled to compensatory damages, treble damages, and other damages entitled under the Lanham Act, in addition to any and all equitable and injunctive relief afforded by the Lanham Act.

97.     Defendants' violations of the Lanham Act were committed willfully, maliciously, and/or in conscious disregard of the enforceable Agreements and rights of DME, which entitles Plaintiff DME to exemplary and punitive damages and an award of attorneys' fees under the Lanham Act.

## COUNT III
## Violation of the Ohio Uniform Trade Secrets Act
## Against All Defendants

98.     Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

99.     OBM invested significant time, effort, and expense to develop significant and economically valuable confidential business information and trade secrets regarding its specific industry and business as detailed above.

100.    Plaintiff DME similarly invested significant time, effort, and expense to purchase, acquire, and continue developing the significant and economically valuable Confidential Information previously developed by OBM.

101.    The Confidential Information derives independent economic value from not being generally known or readily ascertainable through proper means by others outside of OBM and DME who could obtain economic value from its disclosure or use.

102.    OMB took reasonable measures to maintain the secrecy of the Confidential Information, and DME has continued to take such reasonable measures as detailed herein.

103.    The Confidential Information accordingly constitutes a trade secret as defined by Ohio's Uniform Trade Secrets Acts ("OUTSA"), O.R.C. § 1333.61, *et seq*.

104.    While they were employed by OBM, Defendants Haddad, Bushmeyer, and Utter acquired OBM's Confidential Information and trade secrets under circumstances and express contractual provisions giving rise to a duty to maintain its secrecy or limit its use.

105.    Defendant DEX acquired OBM's and DME's Confidential Information and trade secrets knowing or with reason to know that Defendants had utilized improper means to acquire OBM's and DME's Confidential Information and trade secrets, and that the Confidential

Information and trade secrets DEX acquired were derived from or through Defendants Haddad, Bushmeyer, and Utter who had acquired the Confidential Information and trade secrets under circumstances and express contractual duties to maintain its secrecy or limit its use.

106. Neither OBM nor DME expressly or impliedly granted or otherwise authorized Defendants permission to retain, use, or disclose the Confidential Information or trade secrets, other than for the business purposes of OBM.

107. Through their employment with DEX, and through DEX's employment of Defendants Haddad, Bushmeyer, and Utter, Defendants have misappropriated, and will inevitably continue to misappropriate, OBM's and DME's Confidential Information and trade secrets in violation of O.R.C. § 1333.61, *et seq.*

108. In addition, Defendants Haddad, Bushmeyer, and Utter have converted and/or further intend to convert OBM's and DME's trade secrets related to products and services used in interstate commerce, to the economic benefit of Defendants, with knowledge that this misappropriation and misuse of OBM's trade secrets will further injure the financial well-being of DME.

109. Through the use of this OBM's and DME's Confidential Information and trade secrets, Defendants – DME's direct competitors – have and will continue to obtain economic value and an unfair business advantage over DME.

110. Through the actions described herein, Defendants have violated and will continue to violate O.R.C.§ 1333.61, *et seq.*

111. Defendants' conduct as detailed herein demonstrates that Defendants' misappropriation of DME's Confidential Information and trade secrets was knowing, intentional, willful, and malicious.

112.    Defendants misappropriation of DME's Confidential Information and trade secrets has and will continue to cause financial harm to Plaintiff DME.

**COUNT IV**
**Breach of Contract**
**(Non-Disclosure of Confidential Information, Non-Competition,**
**Non-Solicitation, and Non-Disparagement)**
**Against Defendants Haddad, Bushmeyer, and Utter**

113.    Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

114.    OBM entered into contractual Agreements with Defendants Haddad, Bushmeyer, and Utter as detailed herein.

115.    The terms of the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement are express, clear, and unambiguous.

116.    Despite these agreed-upon terms, with Defendants Haddad, Bushmeyer, and Utter breached the terms of their respective Agreements by their conduct detailed above, including but not limited to accepting employment with Defendant DEX a direct competitor of OBM and DME, retaining OBM and DME Confidential Information, storing such OBM and DME Confidential Information on DEX property, both in paper and electronic form, disclosing OBM and DME Confidential Information to others at DEX, including DEX management personnel, using OBM and DME Confidential Information to directly compete with the business and services of OBM and DME, directly and indirectly soliciting OBM and DME customers within the timeframe and geographic areas prohibited by the Agreements, and making untrue, materially misleading, and disparaging statements about OBM and DME, their staff, and their equipment and services.

117.    As a direct result of Defendants Haddad's, Bushmeyer's, and Utter's breach of their respective Agreements, Plaintiff DME has lost customers to Defendants, Plaintiff DME has been

forced to adjust its equipment and services offerings to less favorable and less profitable terms in order to retain other OBM customers, and Plaintiff DME has suffered harm, and will continue to suffer harm, resulting in economic damages and loss.

## COUNT V
### Tortious Interference with Customer Contracts and Business Relations
### Against All Defendants

118.   Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

119.   OBM and DME had and have business and contractual relationships with numerous customers for various office equipment and services.

120.   Defendants actually knew or should have known of the existence of these business and contractual customer relationships. Indeed, Defendants Haddad, Bushmeyer, and Utter secured many of those contractual relationships on OBM's behalf during their prior employment with OBM.

121.   Through the unlawful conduct described herein, including but not limited to Defendants' violation of their confidentiality, non-competition, non-solicitation, and non-disparagement obligations, their misappropriation of OBM's and DME's Confidential Information and trade secrets, and their unfair and unlawful competition with OBM and DME in violation of their contractual obligations and applicable federal and Ohio law, Defendants have intentionally, wrongfully, and tortiously interfered with these business and contractual customer relationships between OBM and DME and their customers.

122.   There is no lawful justification for Defendants' tortious interference with these business and contractual customer relationships.

123.     As a direct and proximate result of Defendants' conduct, DME has lost customers to Defendants, Plaintiff DME has been forced to adjust its equipment and services offerings to less favorable and less profitable terms in order to retain other OBM customers, and Plaintiff DME has suffered other economic damages and loss.

<div align="center">

**COUNT VI**
**Tortious Interference with Contract**
**Against Defendant DEX**

</div>

124.     Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

125.     Defendants Haddad, Bushmeyer, and Utter respectively entered into the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement prior to their employment with DEX.

126.     DEX actually knew or should have known of the existence of the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement prior to DEX employing the individual Defendants Haddad, Bushmeyer, and Utter to compete with OBM and DME.

127.     On or about February 27, 2025 and May 7, 2025, Defendant DEX had in its possession true and accurate copies of the Haddad Agreement, the Bushmeyer Agreement, and Utter Agreement, and DEX accordingly had actual knowledge of Defendants Haddad's, Bushmeyer's, and Utter's obligations pursuant to those Agreements.

128.     Defendant DEX has nevertheless continued its unlawful activities, and continued to employ Defendants Haddad, Bushmeyer, and Utter in violation of their legal and contractual obligations to OBM and DME for DEX's benefit and to OBM's and DME's detriment.

129.     DEX has intentionally induced and procured Defendants Haddad, Bushmeyer, and Utter to breach their respective Agreements specifically in order for DEX to directly compete with OBM and DME in Ohio and expand its customer base and industry knowledge or know-how.

130.     There is no lawful justification for DEX's tortious interference with the Bushmeyer Agreement, the Haddad Agreement, and the Utter Agreement.

131.     As a direct and proximate result of DEX's conduct, DME has lost customers to Defendants, Plaintiff DME has been forced to adjust its equipment and services offerings to less favorable and less profitable terms in order to retain other OBM customers, and Plaintiff DME has suffered other economic damages and loss.

### COUNT VII
### Unjust Enrichment
### Against All Defendants

132.     Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

133.     Defendants Haddad, Bushmeyer, and Utter were employed by OBM and, as a condition of employment, entered into valid and enforceable Agreements, governed by Ohio law.

134.     Under the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement, Defendants Haddad, Bushmeyer, and Utter agreed not to disclose OBM's Confidential Information, not to compete with OBM within a defined geographic area for a term of twelve (12) months, not to solicit OBM's customers, and not to make disparaging statements about OBM.

135.     After voluntarily resigning their employment with OBM, Defendants Haddad, Bushmeyer, and Utter willfully violated their respective Agreements by virtue of all the conduct described herein.

136.     As a direct and proximate result of these actions, Defendants received and retained benefits including, but not limited to, access to the Confidential Information of OBM and DME, access to business opportunities, revenue, client relationships, and trade secrets – benefits that rightfully belong to DME.

137.     Defendants were aware of these benefits and unjustly retained them at the expense of DME, without compensation or justification.

138.     As a direct and proximate result of Defendants' conduct, DME has lost customers to Defendants, Plaintiff DME has been forced to adjust its equipment and services offerings to less favorable and less profitable terms in order to retain other OBM customers, and Plaintiff DME has suffered other economic damages and loss.

139.     Under Ohio law, it would be inequitable and contrary to the principles of justice to permit Defendants to retain the benefits obtained through their wrongful conduct.

<div align="center">

**COUNT VIII**
**Violations of the Ohio Deceptive Trade Practices Act (ODTPA)**
**Against All Defendants**

</div>

140.     Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein

141.     DME is a "person" as defined by O.R.C. § 4165.01(D).

142.     DEX is a "person" as defined by O.R.C. § 4165.01(D).

143.     Defendant Haddad is a "person" as defined by O.R.C. § 4165.01(D).

144.     Defendant Bushmeyer is a "person" as defined by O.R.C. § 4165.01(D).

145.     Defendant Utter is a "person" as defined by O.R.C. § 4165.01(D).

146.     All Defendants violated O.R.C. § 4165.02(A)(10) when Defendants, either individually, collectively, or through other DEX personnel, employees and representatives,

purposefully and knowingly disparaged DME and DME's services and business to DME's own customers as well as prospective customers through misleading, deceptive statements regarding DME's business and services in addition DME's recent acquisition of OBM.

147.    At all relevant times, Defendants Bushmeyer, Haddad, and Utter misappropriated and wrongfully utilized OBM's and DME's trade secrets and Confidential Information in order to carry out its unfair and deceptive practices, solely for their own competitive advantage, financial gain, and profit for themselves and their employer, DEX.

148.    At all times, DEX has had knowledge of the individual Defendants' unlawful conduct and actions set forth herein, and has encouraged, permitted, and/or furthered such unlawful conduct and actions in order to confuse and deceive the public and/or or otherwise unfairly compete and cause harm to its direct competitor, DME.

149.    DME has been irreparably harmed as a result of Defendants' violative conduct or actions, and it seeks recovery under O.R.C. § 4165.01, *et seq.*

150.    Under Ohio Revised Code Section 4165.02(A)(2), DME is a person who has been injured as a result of Defendants' deceptive trade practices and may commence a civil action to recover damages.

151.    DME has been damaged and continues to be damaged as a direct and proximate cause of the foregoing conduct.

152.    Accordingly, DME is entitled to damages for Defendants' violations of the ODTPA, in addition to any and all equitable and injunctive relief under the ODTPA, O.R.C. § 4106.03.

153.   Defendants violations of the ODTPA were committed willful, maliciously, and/or in conscious disregard of the enforceable Agreements and rights of DME, which entitles DME to exemplary and punitive damages and an award of attorneys' fees under the ODTPA.

**COUNT IX**
**Declaratory Judgment**
**Against All Defendants**

154.   Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

155.   A real controversy exists between the parties regarding:

a.   whether Defendant Haddad's employment with DEX, combined with his knowledge, disclosure, and use of OBM's and DME's Confidential Information and trade secrets, and his conduct in competing with and soliciting business of OBM, constitute violations of the Haddad Agreement with OBM;

b.   whether Defendant Bushmeyer's employment with DEX, combined with his knowledge, disclosure, and use of OBM's and DME's Confidential Information and trade secrets, and his conduct in competing with and soliciting business of OBM, constitute violations of the Bushmeyer Agreement with OBM;

c.   whether Defendant Utter's employment with DEX, combined with his knowledge, disclosure, and use of OBM's and DME's Confidential Information and trade secrets, and his conduct in competing with and soliciting business of OBM, constitute violations of the Utter Agreement with OBM;

d.   whether the untrue, materially misleading, and disparaging statements of Defendants Haddad, Bushmeyer, and Utter about OBM and DME, their staff,

and their equipment and services constitute violations of the Agreements with OBM;

e.   whether Defendants Haddad, Bushmeyer, and Utter have otherwise violated their Agreements with OBM;

f.   whether the covenants and restrictions set forth in the respective Agreements are reasonable, are no greater than necessary for the protection of OBM's and DME's legitimate business interests, impose no undue hardship on the individual Defendants, and are not injurious to the public;

g.   whether the Agreements are enforceable as drafted and agreed to by Defendants Haddad, Bushmeyer, and Utter, or with such modifications as the Court may determine are required by law;

h.   whether Defendants violated the DTSA, 18 U.S.C. § 1832 & 1836;

i.   whether Defendants violated the Lanham Act, 42 U.S.C. § 1125(a);

j.   whether Defendants violated the Ohio Uniform Trade Secrets Act, O.R.C. § 1333.61, *et seq.*

k.   whether Defendants violated the Ohio Deceptive Trade Practice Action, pursuant to O.R.C. § 4165.01, et seq.

l.   whether DME is entitled to injunctive relief under federal and/or state law.

156.   The controversy is justiciable.

157.   Speedy relief is necessary to preserve the rights of the parties.

158.   In light of this controversy, Plaintiff DME asks that this Court issue a declaration of rights and duties of the parties pursuant to the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement.

**COUNT X**
**Injunctive Relief**
**Against All Defendants**

159.    Plaintiff DME incorporates by reference each and every allegation set forth in the foregoing paragraphs of its Complaint as if fully restated herein.

160.    DEX's continued employment of Defendants Haddad, Bushmeyer, and Utter has and will continue to result in the misuse of DME's Confidential Information and/or trade secrets, in direct violation of the Haddad Agreement, the Bushmeyer Agreement, and the Utter Agreement and applicable state and federal law, wholly to the detriment of OBM and DME and causing irreparable financial and reputational harm for which DME has no adequate remedy at law.

161.    Defendants Haddad, Bushmeyer, and Utter, whether individually, respectively, or jointly, past and continuing unlawful conduct and/or actions set forth in this Agreement have violated and will continue to violate the Lanham Act and ODTPA to further anticompetitive and unfair competition as well as wrongfully promote commercial business of DEX , wholly to the detriment of OBM and DME and causing irreparable financial and reputational harm for which DME has no adequate remedy at law.

162.    Plaintiff DME requests that Defendants Haddad, Bushmeyer, and Utter be ordered to honor their contractual obligations, immediately cease their employment with DEX, and be prohibited from resuming or further securing employment with DEX or any other direct competitor of OBM within any of the geographic locations set forth in **Exhibit A** to their respective Agreements until the expiration of twelve (12) months following the date of the Court's Order to this effect.

163.    Plaintiff DME requests that Defendants Haddad, Bushmeyer, and Utter be ordered not directly or indirectly accept or engage in any other employment or activity that competes with

31

DME within the geographic areas listed in their respective Agreements until the expiration of twelve (12) months following the date of the Court's Order to this effect.

164. Plaintiff DME requests that Defendants immediately cease any and all unlawful activities, including but not limited to contacting, advertising, and/or soliciting existing customers of DME, whether those existing customers were acquired with the acquisition of OBM or acquired after the acquisition of OBM; publishing any and all misleading, deceptive, false, or confusing information regarding the business of DME and OBM, the acquisition of DME and OBM, the services of DME and OBM, or the sales practices of DME and OBM, to any and all DME customers as well as all third parties in the geographic areas currently restricted by the terms of the respective Agreements; and coordinating other non-party DEX personnel to do any of the foregoing.

165. Plaintiff DME requests that Defendants be ordered to immediately return of any and all OBM Confidential Information and trade secrets currently in Defendants' possession, either in paper, electronic, or any other form or format whatsoever.

166. Plaintiff DME requests that Defendants be ordered not to disclose or use any Confidential Information or trade secrets of OBM or DME at any time in the future.

167. Plaintiff DME requests that Defendants be ordered not to directly or indirectly solicit any OBM or DME customer or employee to modify or terminate their relationship with OBM, or assist anyone else in doing so, within any of the geographic locations set forth in **Exhibit A** to their respective Agreements until the expiration of twelve (12) months following the date of the Court's Order to this effect.

168. For the reasons set forth above, DME is likely to succeed on the merits of its claims and requests for Declaratory Judgment.

169. DME therefore seeks appropriate injunctive relief under federal and state law, including but not limited to an Order reflecting the terms set forth above.

**WHEREFORE**, Plaintiff Donnellon McCarthy Enterprises, Inc. prays that it be granted judgment against Defendants DEX Imaging, LLC, Anthony Haddad, Dax Bushmeyer, and Mathew Utter, jointly and severally, as well as all appropriate legal and equitable relief as follows:

i. An appropriate Order for declaratory relief as specified in Count IX above;

ii. An appropriate Order for injunctive relief against Defendants as specified in Count X above, including disgorgement of all gains, profits, or benefits unjustly retained by Defendants.

iii. Judgment and an award of monetary damages against the Defendants DEX Imaging, LLC, Anthony Haddad, Dax Bushmeyer, and Mathew Utter, jointly and severally, in an amount to be determined at trial but in excess of $75,000, including but not limited to compensatory damages for actual loss, unjust enrichment, reasonable royalties, treble damages, exemplary damages, punitive damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and all other appropriate legal and equitable relief to which Plaintiff may be lawfully entitled.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Chad E. Willits*
Chad E. Willits (0066541)
Michael J. Caligaris (0099722)
REMINGER CO., LPA
525 Vine Street, Suite 1500
Cincinnati, OH 45202
Tel: (513) 721-1311; Fax: (513) 721-2553
Email: cwillits@reminger.com
   mcaligaris@reminger.com
***Counsel for Plaintiffs***

</div>

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Chad E. Willits*_____
Chad E. Willits, Esq. (0066541)
Michael J. Caligaris (0099722)